IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOS. PD-1708-08 & PD-1709-08






LEONARD MILES III, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIFTH COURT OF APPEALS


DALLAS COUNTY





 Cochran, J., filed a concurring opinion in which Johnson and Alcala, JJ.,
joined.


O P I N I O N 



 I join the majority. I write separately because this case is a mess. The law concerning
possession of codeine is confusing and incoherent. The indictment in this case is vague,
insufficient, and fails to inform anyone of the precise offense charged. The jury charge
tracked the indictment and was equally insufficient and deficient. And, most importantly,
the State failed to prove that appellant possessed codeine in any specific one of the three
possible penalty groups. Aside from that, everything's fine, except that appellant, in spite
of the proof that he possessed 304 grams of a codeine mixture, is entitled to an acquittal
because the State failed to plead or prove any specific codeine offense.

 Possession of codeine (or possession with intent to deliver codeine) may fall into one
of three possible penalty groups under the Texas Health and Safety Code, depending on (1)
its concentration in the final substance, and (2) whether the codeine is mixed with other
medicines. (1) Codeine may come in various forms and it may be medically prescribed in
various forms for different purposes. Pure codeine is very highly regulated, but it may be
prescribed for certain maladies, such as pain from aggressive cancer. Other forms of
codeine, mixed with other nonnarcotic drugs, are also controlled substances and may be
obtained only by prescription, but their abuse is less likely to lead to serious medical
problems, so the illegal possession of substances containing those medicines is less serious. 
The three different types of possible prescription codeine sources-pure form, strong form,
weak form-act as a rough proxy for the three different penalty groups. 

 Codeine in Penalty Group 4 is prescription-level cough syrup. (2) Possession of codeine
in Penalty Group 4 is prohibited if the actor did not obtain the cough medicine with a valid
prescription. (3) The definition of "cough syrup" codeine in Penalty Group 4 is

 A compound, mixture, or preparation containing limited quantities of any of
the following narcotic drugs that includes one or more nonnarcotic active
medicinal ingredients in sufficient proportion to confer on the compound,
mixture, or preparation valuable medicinal qualities other than those possessed
by the narcotic alone: not more than 200 milligrams of codeine per 100
milliliters or per 100 grams. (4)


So when the State wants to charge a defendant with unauthorized possession of regular
prescription "cough syrup," this is what it should both plead and prove. The indictment
should allege all that verbiage, the jury charge should include all that verbiage, and a witness
must testify that the substance analyzed fits that lengthy definition.

 But the actor might possess stronger prescription "cough syrup" or prescription pain
pills, such as Tylenol 3, that contain codeine. (5) That type of medicinal codeine falls into
Penalty Group 3. The definition of "cough syrup on steroids" or prescription pills containing
codeine in Penalty Group 3 is

 a material, compound, mixture, or preparation, containing limited quantities
of the following narcotic drugs, or any of their salts: not more than 1.8 grams
of codeine, or any of its salts, per 100 millileters or not more than 90
milligrams per dosage unit, with one or more active, nonnarcotic ingredients
in recognized therapeutic amounts. (6)


Again, the State should plead the unauthorized possession of codeine in Penalty Group 3 by
setting out all that verbiage; the jury charge should track that verbiage, and a witness must
testify that the substance possessed by the defendant meets that specific definition.

 Possession of codeine, without a prescription, that does not meet the definition of
either Penalty Group 3 or Penalty Group 4 is proscribed in Penalty Group 1. (7) That is, the
substance contains some amount of codeine (any amount at all) but (1) it does not contain 
other nonnarcotic therapeutic ingredients, or (2) it does contain some nonnarcotic therapeutic
ingredients, but the codeine concentration is greater than 1.8 grams (Penalty Group 3) or 200
mg (Penalty Group 4) per 100 milliliters of substance. (8) If the State wishes to charge
possession of codeine in Penalty Group 1, it should plead that the defendant possessed
codeine (in some amount) "not listed in Penalty Group 3 or 4." The indictment should
explicitly state that the defendant did

 intentionally or knowingly possess [or possess with intent to deliver] a
controlled substance, to-wit: CODEINE not listed in Penalty Group 3 or 4, in
an amount by aggregate weight, including any adulterants or dilutants, of 200
grams or more but less than 400 grams.

The jury charge should do the same, except that the jury charge must also set out the
definitions of codeine in Penalty Groups 3 and 4, so the jury can determine that this
substance containing codeine does not meet those definitions, i.e., it is neither regular nor
super-strong cough syrup, nor regular prescription-level codeine medication. Similarly, a
witness must testify that this substance does not contain the nonnarcotic substances that give
therapeutic value to codeine listed in Penalty Groups 3 and 4.

 The Legislature has chosen to define the illegal possession of codeine in a very
infelicitous manner, (9) especially by defining the most serious offense (codeine that does not
have nonnarcotic agents added that give it additional medicinal value or that has too high a
concentration of codeine along with the nonnarcotic medicines) set out in Penalty Group 1
as requiring the State to disprove that the substance falls into Penalty Group 3 or 4. 
Nonetheless, the Legislature writes the laws, and generally it is entitled to write them in the
manner it chooses, regardless of the burden this puts on others.

 In the present case, the indictment stated that appellant did


 unlawfully and knowingly possess with intent to deliver a controlled
substance, to-wit: CODEINE, in an amount by aggregate weight, including any
adulterants or dilutants, of 200 grams or more but less than 400 grams. 

No one can tell by looking at the indictment which Penalty Group-1, 3, or 4-that the State 
alleged. (10) The indictment could have alleged all of the statutory verbiage in either Penalty
Group 3 or 4; it could have alleged "codeine not listed in Penalty Group 3 or 4"; it could even
have alleged "Codeine listed in Penalty Group 1," "Codeine listed in Penalty Group 3," or
"Codeine listed in Penalty Group 4." This indictment is defective. But appellant did not file
a motion to quash, so it is now too late for him to complain about the indictment.

 Similarly, the jury charge in the present case did not ask the jury to decide whether the
State had proven that appellant possessed with intent to deliver codeine in Penalty Group 1,
3, or 4. The jury charge contains no definitions of codeine, except to say, "You are instructed
that Codeine is a controlled substance." Possession or possession with intent to deliver any
of these three types of codeine without a prescription may be illegal, but the type of codeine
one possesses makes a significant difference in the punishment level. These punishment
levels are so significant that the offenses are listed in entirely different statutes: Manufacture
or Delivery of Substance in Penalty Group 1 is an offense under Section 481.112;
Manufacture or Delivery of Substance in Penalty Group 3 or 4 is an offense under Section
481.114; Possession of Substance in Penalty Group 1 is an offense under Section 481.115;
Possession of Substance in Penalty Group 3 is an offense under Section 481.117; and
Possession of Substance in Penalty Group 4 is an offense under Section 481.118. The
Legislature obviously intended all of these to be separate and distinct offenses with separate
and distinct penalty ranges. The State must pick one offense and then prove that one.

 The evidence in this case showed that appellant possessed 238 milliliters of a liquid
that weighed 304 grams and had both codeine and promethazine in it. The concentration of
codeine was 158 milligrams per one hundred milliliters. It looks as if the State was
attempting to prove that appellant was making "drank" and was using a prescription cough
syrup that contains promethazine. That substance would fall into Penalty Group 4. But as
the majority explains, the State never asked "the magic question"-whether the nonnarcotic
substance-the promethazine-was "in sufficient proportion to confer on the compound,
mixture, or preparation valuable medicinal qualities." (11) Of course the State need not prove
that any particular proportion or amount of the promethazine was present, only that the
promethazine was a nonnarcotic substance and it was present in a "sufficient proportion to
confer on the compound valuable medicinal qualities other than those possessed" by the
codeine alone. (12) Common sense may suffice for many things, but it will not suffice for
satisfying the statutory definition of the appropriate penalty group and hence the correct
codeine offense. Under these circumstances, appellant is entitled to an acquittal because the
evidence is insufficient to prove his guilt for possessing a substance that meets the definition
of any of the three possible penalty groups.

 Perhaps the Legislature will redraft these statutes to make them a little more user (and
jury) friendly. Until and unless it does, a witness must testify that the substance meets the 
statutory definition of codeine as that definition is statutorily set out in either Penalty Group
1, 3, or 4. And the jury charge must contain the statutory definition of the appropriate
penalty group. Finally, if a defendant files a motion to quash the indictment for lack of
notice, the State must allege which penalty group offense it plans to prove in the indictment.

 With these additional comments, I join the majority opinion.


Filed: December 7, 2011

Publish

 
1. The Penalty Groups roughly correspond to the Controlled Substance Schedules, which
are lists of controlled substances published every year by the Texas Commissioner of Public
Health. The schedules are published in the Texas Register and can be accessed here:
http://www.dshs.state.tx.us/Layouts/ContentPage.aspx?PageID=35821&id=3847 (last accessed
November 16, 2011). The January 2011 schedule is available at 36 Tex. Reg. 306 (January 21,
2011), or online at http://www.dshs.state.tx.us/dmd/PDF/Schedules2011.pdf.
2. This category of codeine usually refers to Promethazine/codeine syrup which contains
an antihistime (promethazine) and a cough suppressant (codeine). Another name for this
substance is Pherergan/codeine syrup. This substance is a Schedule V narcotic under the Federal
Controlled Substance Act. 21 U.S.C. § 829(c). These are generally over-the-counter
medications, but Texas regulated their use under Tex. Health & Safety Code § 481.074(i) ("A
person may not dispense a controlled substance listed in Schedule V [of the federal act] and
containing 200 mg or less of codeine . . . per 100mL or 100g, without the prescription of a
practitioner"), because these cough syrups were being diluted and abused as a concoction called
"drank." See Wyatt v. Department of Fam. & Protective Serv., 193 S.W.3d 61, 65 (Tex.
App.-Houston [1st Dist.] 2006, no pet.). This "hip-hop community" drink is described in
Wikipedia, which is perhaps an acceptably authoritative source for this sort of "street argot"
information. See generally, "Purple Drank" http://en.wikipedia.org/wiki/Purple_drank. 
3. Tex. Health & Safety Code § 481.118(a).
4. Id., § 481.105(1).
5. Penalty Group 3 codeine medications include, for example, Empirin 4 (aspirin and
codeine No.4 for pain), Fiorinal 3 (aspirin, caffeine, codeine No.3, and a barbituate; used for
tension headaches), and Tylenol 3 (Tylenol and codeine No.3 for pain). The codeine numbering
system shows the concentration of codeine; higher numbers denote higher concentrations. Each
of these other ingredients (aspirin, cafeeine, Tylenol, etc.) are the "nonnarcotic active medicinal
ingredients" that "confer on the mixture . . . valuable medicinal qualities other than those
possessed by the narcotic alone" referred to by the statute. Tex. Health & Safety Code §
481.105(1).
6. Id., § 481.104(4).
7. Id., § 481.102(3)(A). Possession of codeine in Penalty Groups 3 or 4 is a less serious
offense than possession of codeine in Penalty Group 1, but it is not always true that possession of
codeine in Penalty Groups 3 or 4 is a lesser-included offense of possession of codeine in Penalty
Group 1. The less serious offense requires proof of an element-a mixture that contains a
nonnarcotic ingredient that confers upon the mixture medicinal qualities other than those
possessed by pure codeine-that is not necessary to prove possession of codeine in Penalty Group
1. One small pill of pure codeine, dissolved in a bottle of soda, will always be a Penalty Group 1
offense, regardless of how weak the concentration of codeine in the liquid. It is not the final
concentration or percentage of codeine in the bottle of soda that is determinative; it is the fact
that the actor used a very highly controlled substance-pure codeine-to start with. Pure codeine
pills are much stronger and more highly controlled than are cough syrups containing codeine. 
Sometimes, of course, an offense under Penalty Group 3 or 4 is a lesser-included offense of an
offense under Penalty Group 1. For example, suppose the codeine mixture does contain a
nonnarcotic active medicinal ingredient in sufficient proportion to confer on the mixture valuable
medicinal qualities other than those possessed by the narcotic alone, but the concentration of
codeine in that mixture is greater than 1.8 grams per 100 milliliters, the State may plead a Penalty
Group 1 offense. If the proof shows that it is only 1.7 grams per 100 milliliters, the State could
seek an instruction on the lesser-included Penalty Group 3 offense. 
8. Penalty Group 1 codeine medications would include, for example, Codeinum ("codeine
base" pellets; a prescription-only homeopathic remedy for severe coughs) or codeine sulfate
(strong, pure codeine, without any other medicinal ingredients; used for severe pain).
9. Several other drugs listed in Penalty Group 1 share this same peculiar characteristic that
requires the State to plead and prove that the substance the actor possessed is not listed in Penalty
Group 3 or 4. 
10. The dissent notes that the notation "POSS CS INT DEL 200G/PG3/4/2nd" appears in
the top right-hand corner of the indictment under the heading "Charge." We may look to the
caption of an indictment to discern what offense the State intends to plead, but in this case, that
caption is not very helpful because it presumably stands for Penalty Group 3 or 4. These are two
separate offenses, so the caption is somewhat like "assault/agg. assault D/W." At any rate, even
if one could discern the specific offense that the State intended to allege, the jury charge does not
say anything about the specific offense that the jury must agree on and the evidence does not
support proof, beyond a reasonable doubt, of any specific offense.
11. See generally Sanchez v. State, 275 S.W.3d 901 (Tex. Crim. App. 2009) (evidence was
sufficient to show that nonnarcotic substance in mixture in bottle containing codeine was in
sufficient proportion to confer on that mixture valuable medicinal qualities other than those
possessed by the codeine itself).
12. See Sanchez v. State, 275 S.W.3d 901, 905-07 (Tex. Crim. App. 2009) (Keller, J.,
concurring). I joined Judge Keller's concurrence in Sanchez, and I agree entirely with her
statement that "the failure to prove the proportion of promethazine does not render the evidence
legally insufficient to support a conviction for an offense involving codeine under Penalty Group
4." See infra, dissenting op., at 4. The State must, however, prove that the promethazine, in
whatever proportion (or quantity) it is found within the substance is (1) a sufficient proportion to
(2) give the mixture valuable medicinal qualities other than those possessed by the codeine
alone. The State must prove the definition of codeine under Penalty Group 4, but it need not
prove any particular quantity of the nonnarcotic or any particular proportion of it within the final
mixture.